1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BERNARD RHODES,

11            Petitioner,                       No. CIV S-04-2250 RRB GGH P

12        vs.

13   MIKE KNOWLES,                              ORDER AND

14            Respondent.                       FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  This action is proceeding on the original petition filed

19   October 22, 2004.  Petitioner challenges two prison disciplinary convictions based on his refusal

20   to submit to DNA testing as required by Cal. Penal Code § 296.

21            After carefully reviewing the record, the court finds that an evidentiary hearing is

22   required as to two of petitioner's claim.  The court recommends that the petition be denied in all

23   other respects.

24   II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

25            The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

26   petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

standards of review to be used by a federal habeas court in assessing a state court's adjudication

of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

(9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

between "contrary to" clearly established law as enunciated by the Supreme Court, and an

"unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

Court on a point of law, or (2) if the state court case is materially indistinguishable from a

Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to

mixed questions of law and fact, that is, the application of law to fact where there are no factually

on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

AEDPA standard of review which directs deference to be paid to state court decisions.  While the

deference is not blindly automatic, "the most important point is that an *unreasonable* application

of federal law is different from an incorrect application of law....[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

objectively unreasonable nature of the state court decision in light of controlling Supreme Court

authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

1    The state courts need not have cited to federal authority, or even have indicated

2  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

3  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

4  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

5  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

6  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

7  established Supreme Court authority reviewed must be a pronouncement on constitutional

8  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

9  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

10    However, where the state courts have not addressed the constitutional issue in

11  dispute in any reasoned opinion, the federal court will independently review the record in

12  adjudication of that issue.  "Independent review of the record is not de novo review of the

13  constitutional issue, but rather, the only method by which we can determine whether a silent state

14  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

15  2003).

16    The San Joaquin County Superior Court was the last state court to issue a

17  reasoned decision addressing the claims raised in this action.  See Petition, Exhibits G, H, I.

18  Accordingly, the court considers whether the denial of these claims by the Superior Court was an

19  unreasonable application of clearly established Supreme Court authority.  Shackleford v.

20  Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary

21  denial of a claim, the court "looks through" the summary disposition to the last reasoned

22  decision).

23  III.  Discussion

24    The petition raises eight claims challenging two different prison disciplinary

25  convictions for refusing to submit to DNA testing.  Respondent's answer specifically addresses

26  two of these claims: 1) California's DNA law violates the Fourth Amendment; 2) the

1  administrative regulations were not properly adopted.  The court will address all claims raised in

2  the petition despite the lack of input from respondent.

3     A.  Claims One and Seven

4     Claims one and seven challenge the validity of petitioner's prison disciplinary

5  convictions on grounds that the law requiring him to submit to DNA analysis is unconstitutional.

6  Claim one appears to allege that the DNA Identification Bank Law (DNA law) should not apply

7  to petitioner because it was enacted after his criminal conviction.  The court construes this claim

8  to allege that the DNA law, as applied to petitioner, violates the Ex Post Facto Clause.  Claim

9  seven alleges that the DNA law violates the Fourth Amendment.

10     Cal. Penal Code § 296 provides, in relevant part, that any person convicted of a

11  felony shall provide buccal swab samples, right thumbprints, and a full palm print impression of

12  each hand, and any blood samples or other biological samples required pursuant to this chapter

13  for law identification analysis.

14     In Rise v. Oregon, 59 F.3d 1556, 1562 (9th Cir. 1995) the Ninth Circuit held that

15  the Oregon statute requiring prisoners to provide DNA samples does not violate the Ex Post

16  Facto Clause because the statute's purpose is to create a data bank to help identify and prosecute

17  criminals, not punish convicts.  California's DNA law has the same purpose.  See Cal. Penal

18  Code § 295(c) (the purpose of the DNA data base is to assist with detection and prosecution of

19  persons responsible for sex offenses and other crimes).  Pursuant to Rise v. Oregon, petitioner's

20  Ex Post Facto claim is without merit.

21     In United States v. Kincade, 379 F.3d 813, 839-840 (9th Cir. 2004)(en banc), the

22  Ninth Circuit held that mandatory blood draws for DNA testing of violent felons on conditional

23  release does not violate the Fourth Amendment.  In Rise v. Oregon, supra, decided earlier, the

24  Ninth Circuit held that an Oregon statute requiring convicted murderers and sex offenders to

25  submit to blood testing for DNA analysis did not violate the Fourth Amendment.  59 F.3d at

26  1562.  In Kincade, the Ninth Circuit reaffirmed Rise and held that "its reliance on a totality of the

4

circumstances analysis to uphold compulsory DNA profiling of convicted offenders both

comports with the Supreme Court's recent precedents and resolves this appeal in concert with the

requirements of the Fourth Amendment." Kincade, 379 F.3d at 832.

In Samson v. California, 126 S.Ct. 2193 (2006) the Supreme Court applied the

totality of the circumstances test in upholding a California law providing that, as a condition of

release, every prisoner eligible for state parole must agree to be subject to search or seizure by a

parole officer with or without a warrant, and with or without cause.  126 S.Ct. at 2127, 2199 n. 3,

2202.

Applying the totality of the circumstances test, in U.S. v. Kriesel, 508 F.3d 941

(9th Cir. 2007), the Ninth Circuit collecting DNA samples from nonviolent felons on conditional

release does not violate the Fourth Amendment.

Pursuant to Rise, Kincade, and Kriesel, the court finds that petitioner's Fourth

Amendment challenge to California's DNA law is without merit.

The denial of these claims by the Superior Court was not an unreasonable

application of clearly established Supreme Court authority.[1]

B.  Claim Two

Petitioner alleges that his conviction for Rules Violation Report no. DVI 02-1755

should be reversed because time constraints were not met.  In this report, petitioner was charged

with failing to obey orders in violation of Cal. Code Regs. tit. 15, § 3005(b) based on his failure

to submit to DNA testing as required by Cal. Penal Code § 296.  Section 296 provides that any

person convicted of a felony is required to provide buccal swab samples, right thumbprints, and a

full palm print impression of each hand for DNA analysis.

In particular, petitioner claims that prison officials failed to comply with Cal.

Penal Code § 2932(c)(1)(A) which provides that written notice of rules violations shall be given

---

[1]  Petitioner was convicted of second degree murder in 1981.

1  within 15 days after the discovery of information leading to charges that may result in a possible

2  denial of time credit.  According to the rules violation report, on June 20, 2002, petitioner refused

3  to submit to DNA testing.  Petition, Exhibit A, p. 8.  However, the disciplinary report was not

4  filed until July 15, 2002, because on July 12, 2002, it was discovered that petitioner refused DNA

5  testing on June 20, 2002.  Id.  Petitioner appears to argue that the rules violation report should be

6  dismissed because it was not issued within fifteen days of June 20, 2002.

7       Where a prison disciplinary hearing may result in the loss of earned credits, due

8  process requires that the inmate receive certain procedural protections.  "[W]ritten notice of the

9  charges must be given to the disciplinary-action defendant in order to inform him of the charges

10  and to enable him to marshal the facts and prepare a defense."  Wolff v. McDonnell, 418 U.S.

11  539, 563-564, 94 S.Ct. 2963, 2979 (1974).  Second, "at least a brief period of time after the

12  notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance

13  before the disciplinary committee."  Id., 94 S.Ct. at 2979.

14       With regard to notice of the charges, petitioner received all of the constitutional

15  protections required by Wolff, supra.  The alleged failure of respondents to follow the time limits

16  set forth in the state regulations regarding notice does not rise to a constitutional violation.  In

17  any event, Cal. Penal Code § 2932(c)(1)(A) provides that notice shall be given within 15 days of

18  *discovery* of information leading to charges.  The rules violation report indicates that petitioner

19  received his notice of the charges within 15 days of the discovery of his failure to comply with

20  the order to submit to DNA testing.

21       The denial of this claim by the Superior Court was not an unreasonable

22  application of clearly established Supreme Court authority.  Accordingly, this claim should be

23  denied.

24       C.  Claim Three

25       Claim three alleges that there was insufficient evidence to support Rules Violation

26  Report no. DVI 02-1755 because 1) petitioner failed to receive a priority ducat; 2) the report

6

falsely states that petitioner refused to sign a CDC-128 on June 19, 2002; 3) the report falsely states that this was petitioner's third refusal to submit to DNA testing; it was his first; 4) the report falsely states that petitioner failed to comply with the reporting employee's order to submit to DNA testing; the reporting employing did not make this order.

Claim three also alleges that there was insufficient evidence to support Rules Violation Report no. DVI 02-2048 because 1) petitioner failed to receive a priority ducat and a 128B chrono; 2) the reporting employee was not authorized to perform the DNA collection, particularly in his office.  This rules violation charged petitioner with failing to submit to DNA testing in violation of Cal. Code Regs. tit. 15, § 3025.

In <u>Superintendent v. Hill</u>, the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record."  472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985) (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558, 94 S.Ct. 2963 (1974)).  To determine whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  <u>Id.</u> at 455-56, 105 S.Ct. at 2774-2775.

The court first considers petitioner's claim that insufficient evidence supported his conviction for DVI 02-1755 because he failed to receive a priority ducat.  The background to this claim is as follows.

California Department of Corrections Administrative Bulletin 99/02 provides that inmates who meet the requirements for submitting to DNA testing "shall be issued a priority ducat to the designated sample collection station."  Petition, Exhibit C, p. 12.  In addition, "an informing notice shall accompany the priority ducat," informing the inmate of the requirement to submit to testing.  <u>Id.</u>

1    The rules violation report for DVI 02-1755 describes the circumstances of the

2  offense as follows:

> On Sunday, July 12, 2002, at approximately 1200 hours, it was discovered that
> Inmate RHODES, C-24227, D-131, refused to provide blood and saliva samples
> on 6-20-02.  Specifically, on 6-19-02 you refused to sign a 128-B Consent
> Chrono, and you were also issued a Priority Ducat for 06-20-02 to Mainline
> Infirmary for DNA testing.  Penal Code 296.0 is required and in accordance with
> CDC Administrative Bulletin dated August 26, 1999.  This is Inmate Rhodes third
> refusal.

7  Petition, Exhibit A, p. 8.

8    At the hearing, petitioner testified that he reported to the Medical Department but

9  because his name was not on the Ducat List, the officer would not let him into the Medical

10  Department.  Id., p. 9.  Petitioner testified that he did not know the name of the officer and he did

11  not refuse orders to provide blood.  Id.

12    Petitioner entered into evidence four exhibits including a CDC 128-B chrono

13  dated June 20, 2002, addressed to him from Correctional Lieutenant McLemore containing the

14  notice referred to in Administrative Bulletin 99/02.  Id., p. 9, 13.  The notice states that petitioner

15  refused to sign it.  Id. at 13.  Petitioner also entered into evidence Administrative Bulletin 99/02.

16  Id., p. 9.  Petitioner also entered into evidence the Master Ducat List for June 20, 2002, and June

17  21, 2002.  Id., pp. 9, 14, 15.  The Master Ducat lists for these two days do not contain petitioner's

18  name for the medical lab or for any other category for that matter.

19    The rules violation report also acknowledges that the rules violation log states that

20  petitioner refused to sign the 128-B notice form on June 19, 2002, yet the 128-B form is dated

21  June 20, 2002.

22    At the disciplinary hearing, the Senior Hearing Officer gave petitioner a direct

23  order to go with him to the medical department to provide a DNA sample.  Id., p. 10.  Petitioner

24  refused to go.  Id.

25  \\\\\

26  \\\\\

8

At the hearing, Lieutenant McLemore testified regarding the 128-B form:

Q: Did you author Exhibit 1, 128-B signed by you?

A: No.  Lieutenant Placeres authored the chrono.  I issued it to RHODES.  The Chrono is the official 24 hour notification that requires him to provide the DNA samples.  In addition, he was also to be given a Ducat and the C/P was to give him a direct order to provide the samples.

Q: Beyond the scope of the 128-B, did you give him a direct order to report?

A: I don't recall.

Id., p. 10.

At the hearing, petitioner asked Lieutenant McLemore a question:

Q: Lieutenant McLemore, do you recall asking me if I had received a ducat?  I told you "No."  You said, "You will probably get it later."  Isn't that right?

A: His statement is correct.

Id., p. 10.

In finding petitioner guilty, the hearing officer made the following findings:

Senior Hearing Officer noted that on June 20, 2002, Lieutenant R. McLemore issued RHODES a 128-B which [ ] him to provide DNA samples and report to the D.V.I. Medical Department on 06-12-02.  There is no [indi]cation that RHODES reported on 06-21-02.

Lieutenant C. Placeres learned that RHODES had not provided the required DNA samples, and directed Correctional Sergeant R. Roy to submit a CDC 115 for violation of CCR 3005(b).  It appears through testimony of Captain Simon RHODES was discovered on or about 07-12-02 through follow-up investigation by Lieutenant Placeres had failed [to] comply with the 128-B written order of 06-20-02.  Therefore, the date of discovery is viewed as 07-12-02 and no 06-20-02.

Senior Hearing Officer recognizes there is a discrepancy in the date identified in the CDC 115, specifically 06-19-02, which is incorrect.  Further, this Senior Hearing Officer agrees with Inmate RHODES, based on Exhibits [] and # 3, the Master Ducat Sheet, that the Priority Ducat was not issued to him.  However, on 06-20-02, RHODES [was] given a written order which he received directing him to the D.V.I. Infirmary on 06-21-02 for his 296.0 [] Registration.  The evidence collected for the hearing suggests that he refused these written orders.  His refusal [] further supported by his refusal at this hearing to accompany this Senior Hearing Officer to the D.V.I. Medical Department to gain compliance with the registration requirements.  For the above reasons, these charges are substantiated.

Id., p. 11.

9

1    Whether petitioner actually refused to take the DNA test is not clear from the
2    record.  Petitioner contends that someone in the medical department refused to give him the
3    DNA test because he did not have a priority ducat.  Prison officials contend that his refusal to
4    sign the 128-B form indicated that he was refusing to take the DNA test and did not warrant
5    issuance of the ducat, despite the requirement in the regulations that the priority ducat be issued.
6    That petitioner refused to be DNA tested at the time of the disciplinary hearing is not persuasive
7    evidence that he refused to be DNA tested on June 20, 2002.  An evidentiary hearing is required
8    to further develop the facts regarding petitioner's claim that he could not take the DNA test
9    because the priority ducat was not issued.

10    Petitioner also alleges that there is insufficient evidence to support this
11    disciplinary conviction because the report wrongly states that he refused to sign the CDC-128 on
12    June 19, 2002.  As discussed above, the hearing officer found that the report erred in stating that
13    petitioner refused to sign the form on June 19, 2002.  Rather, the correct date was June 20, 2002,
14    as reflected in the 128-B form.  Because the hearing officer made his finding based on the correct
15    date, the court finds that this error is not material.

16    Petitioner also alleges that there was insufficient evidence to support his
17    disciplinary conviction because the report wrongly stated that this was petitioner's third refusal to
18    submit to DNA testing; it was his first.  In finding petitioner guilty, the hearing officer did not
19    rely on petitioner's alleged previous refusals to submit to DNA testing.  This claim is without
20    merit.

21    Finally, petitioner alleges that the report falsely states that petitioner failed to
22    comply with the *reporting* employee's order to submit to DNA testing.  Petitioner alleges that the
23    reporting employee did not make this order.  The rules violation report states that petitioner
24    refused the order of Lieutenant McLemore to submit to DNA testing.  The rules violation report
25    did not find that petitioner refused the order of *reporting* employee Roy to submit to DNA
26    testing.  This claim is without merit.

1    The denial of these claims by the Superior Court was not an unreasonable

2  application of clearly established Supreme Court authority.

3    Claim three also alleges that there was insufficient evidence to support Rules

4  Violation Report no. DVI 02-2048 because 1) petitioner failed to receive a priority ducat and a

5  128B chrono; 2) the reporting employee was not authorized to perform the DNA collection,

6  particularly in his office.

7    The rules violation report for DVI 02-2048 describes petitioner's offense as

8  follows:

9        On Tuesday, August 20, 2002, at approximately 1015 hours, Inmate RHODES, C-
         24227, D-131, refused to provide blood and saliva samples pursuant to Penal
10       Code 298.1, testing as required by California Penal Code and in accordance with
         CDC Administrative Bulletin (AB), dated August 26, 1999.  I informed RHODES
11       that this testing is mandatory and required by law.  I gave RHODES [a] current
         copy of Penal Code § 296.0-296.2.  I ordered Inmate RHODES to comply and
12       take the test.  He stated, "No, I'm refusing."  This is Inmate RHODES's second
         refusal.  Inmate RHODES refused on 07-15-02, Log #02-07-44-2, for the same
13       offense.

14 Petition, Exhibit C, p. 7.

15       At the hearing, petitioner questioned the reporting officer, Sergeant L. Mapes:

16       Q: Is your report accurate?

17       A: Yes.

18       Q: Was proper procedures followed as outlined on the CDC 128-B to collect my
         blood?
19
         A: I asked him to come in my Office to take this test.  He said no.  I did not issue
20       a Priority Ducat.

21 Petition, Exhibit C, p. 8.

22       The hearing officer found petitioner guilty for the following reason:

23       1) Contents of the CDC-115, Log # 02-08-51-2, authored by Correctional
         Sergeant L. Mapes, that indicates on 08-20-02, at approximately 1015 hours,
24       inmate RHODES, C-24227, refused to provide blood and saliva samples pursuant
         to P.C. 298.1 Testing as required.
25
         2) The 128-B, dated 08-20-02, issued by Sergeant Mapes which directed Inmate
26       RHODES to provide blood, saliva, thumb and palm print samples, pursuant to

                                         11

1    P.C. 296.0.

2  Petition, Exhibit C, p. 8.

3    The 128-B form prepared by Sergeant Mapes states that petitioner refused to sign

4  the form.  Petition, Exhibit C, p. 10.

5    California Department of Corrections Administrative Bulletin 99/02 provides that

6  trained custody staff, including Medical Technical Assistants, shall take the thumb and palm

7  print impressions according to established procedures.  Petition, Exhibit C, p.12.  It goes on to

8  state that inmates shall be issued a priority ducat to the designated sample collection station.  Id.

9  "Every effort shall be made to collect all of the required specimens, samples, and thumb and

10  palm print impressions in one location."  Id.

11    After reviewing the regulations, the court finds that whether Sergeant Mapes was

12  authorized to take petitioner's blood and saliva sample in his office rather than in the medical

13  department is not clear.  If Sergeant Mapes was not authorized to take these samples in his office,

14  then there would not be sufficient evidence to support petitioner's conviction.  Accordingly, the

15  court finds that an evidentiary hearing is warranted to address this issue.  If Sergeant Mapes was

16  authorized to take the samples in his office, then petitioner did not require a priority ducat to the

17  medical department.  If Sergeant Mapes was not authorized to take the samples in his office, then

18  petitioner's need for a priority ducat is a moot issue.

19    D.  Claim Four

20    Claim four alleges that the hearing officers for both rules violation hearings were

21  biased against petitioner.  Due process requires a non-biased decision maker at a prison

22  disciplinary hearing.  Wolff v. McDonnell, 418 U.S. at 570-71, 94 S.Ct. 2963.

23    As for the hearing held regarding Rules Violation Report no. DVI 02-1755

24  petitioner alleges that the hearing officer was biased for the following reasons:

25      On July 23, 2002, at the first hearing, CDC-115-1, the SHO-I [senior hearing
      officer] called Facility Captain, B.J. Simon, where SHO-I discovered that on July
26      12, 2002, she had been informed by Correctional Lieutenant Placeres that

> Correctional Lieutenant McLemore informed him (Placeres) of petitioner's purported refusal to comply with a June 20, 2002, order to comply with DNA Data Base testing, and that she did not having [sic] any personal knowledge of herself of what had occurred (Simon was twice removed).  In turn, RE-I [reporting employee] was given an order to write up petitioner on administrative disciplinary, even though RE-I had no personal knowledge of what had occurred. (See Exhibit A, pp. 9-10.)
>
> While all this was going on, Facility Captain B.J. Simon and Associate Warden J. Tynes (the SHO-1's supervisors) stayed in the hearing room.  This was an enormous pressure on the SHO-1's impartiality, by his immediate supervisors, to find petitioner guilty (even though the process was incorrect) and deprived him of a fair and impartial hearing officer...

Petition, p. 5(h).

The circumstances described above do not demonstrate that the hearing officer for Rules Violation Report no. DVI 02-1755 was biased against petitioner.

Petitioner alleges that the hearing officer involved in Rules Violation Report no. DVI 02-2048, Lieutenant Harmon, was biased because she had previously dismissed another rules violation report charging petitioner with failing to submit to DNA testing because it had been issued less than thirty days after the alleged violation, in violation of Cal. Code Regs. tit. 15, § 3315(a)(3)(s).  Lieutenant Harmon presided over the hearing for Rules Violation Report no. DVI 02-1755.  Petitioner alleges that Lieutenant Harmon was biased in this second hearing because of her decision in the previous hearing.  Petitioner alleges that Lieutenant Harmon showed this bias by imposing the maximum punishment.

That Lieutenant Harmon dismissed the previous rules violation based on violation of time constraints demonstrates that she was not biased against petitioner.  Petitioner's conclusory assertion of bias against defendant Harmon is unsupported.  Accordingly, this claim is without merit.

The denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.

\\\\\

\\\\\

E. <u>Claim Five</u>

In claim five, petitioner alleges that the procedures contained in Administrative Bulletin 99/02 were enacted in violation of the California Administrative Procedures Act (APA).

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for alleged error in the interpretation or application of state law. <u>Middleton v. Cupp</u>, 768 F.2d at 1085; <u>see also</u> <u>Lincoln v. Sunn</u>, 807 F.2d 805, 814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

The Supreme Court has reiterated the standards of review for a federal habeas court. <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S. Ct. 475 (1991).  In <u>Estelle v. McGuire</u>, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief.  The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." <u>Id.</u> at 67-68, 112 S. Ct. at 480.  The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." <u>Id.</u> at 67, 112 S. Ct. at 480, citing <u>Lewis v. Jeffers</u>, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and <u>Pulley v. Harris</u>, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." <u>Id.</u> at 68, 112 S. Ct. at 480.  The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error

14

1   had to be one involving "fundamental fairness," <u>Id.</u> at 73, 112 S. Ct. at 482, and that "we 'have

2   defined the category of infractions that violate "fundamental fairness" very narrowly.'"   <u>Id.</u> at 73,

3   112 S. Ct. at 482.   Habeas review does not lie in a claim that the state court erroneously allowed

4   or excluded particular evidence according to state evidentiary rules.   <u>Jammal v. Van de Kamp</u>,

5   926 F.2d 918, 919 (9th Cir. 1991).

6           Petitioner's claim that the procedures contained in Administrative Bulletin 99/02

7   were enacted in violation of the California APA states a violation of state law only.   Accordingly,

8   this claim is not cognizable and should be dismissed.

9           The denial of this claim by the Superior Court was not an unreasonable

10  application of clearly established Supreme Court authority.

11          F.   <u>Claim Six</u>

12          In claim six, petitioner alleges that the DNA Law has not been correctly

13  administered by respondent.   In support of this claim, petitioner alleges that three other rules

14  violation reports charging him for failing to comply with the DNA Law were dismissed for

15  failure to comply with the DNA law by prison officials.

16          The allegations raised in claim six do not state a cognizable claim for relief.   The

17  denial of this claim by the Superior Court was not an unreasonable application of clearly

18  established Supreme Court authority.

19          G.   <u>Claim Eight</u>

20          Claim eight alleges that the denial of petitioner's claims by the state courts

21  violated petitioner's due process rights.   This claim does not state a cognizable claim for relief.

22  The denial of this claim by the Superior Court was not an unreasonable application of clearly

23  established Supreme Court authority.

24          Accordingly, IT IS HEREBY ORDERED that an evidentiary hearing is required

25  as to petitioner's claim that insufficient evidence supports his conviction for DVI 02-1755

26  because he was not given a priority ducat, and as to his claim that insufficient evidence supports

petitioner's conviction for DVI 02-2048 because the reporting employee was not authorized to perform the DNA test, particularly in his office;

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fifteen** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 03/11/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

rh2250.157